```
UNITED STATES DISTRICT COURT                FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
```

RONALD R. COLSON and
DARYL COLSON,

                     Plaintiffs,

- versus -

DETECTIVE GARY HABER, DETECTIVE
CARL SHEPHERD, SERGEANT
MICHAEL SYKORA, DETECTIVE
BRENDAN BOYLE, SERGEANT SHAUN
MARA, DETECTIVE BRENDAN
PARPAN, ROBERT SOWINSKI, and THE
CITY OF NEW YORK,

                     Defendants.

MEMORANDUM
AND ORDER

13-CV-5394 (JG)(CLP)

APPEARANCES:

    RONALD R. COLSON
        121-21 Tango Lane
        Unit 104
        Raleigh, NC 27613
        *Plaintiff Pro Se*

    DARYL COLSON
        *Plaintiff Pro Se*

    NEW YORK CITY LAW DEPARTMENT
        100 Church Street
        New York, NY 10007
    By:    Maria Fernanda DeCastro
        *Attorney for Defendants*

JOHN GLEESON, United States District Judge:

        Plaintiffs Ronald and Daryl Colson filed a second amended complaint on July 23, 2015, alleging that officers from the New York City Police Department ("NYPD") unlawfully

searched their home, used excessive force, and falsely arrested Ronald Colson on April 16, 2011. Plaintiffs seek relief under 42 U.S.C. § 1983 and state law. Defendant police officers move to dismiss plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6) on statute of limitations grounds. For the reasons set forth below, the motion is denied with respect to the federal claims against the individual defendants and granted with respect to plaintiffs' state law claims. Because the City of New York ("City") was listed as a defendant after the motion to dismiss was filed, the City is directed to show cause in writing by Friday, January 29, 2016 why plaintiffs' federal claims against it should not also survive.

BACKGROUND

The second amended complaint alleges that at around 1:30 PM on April 16, 2011, NYPD officers unlawfully entered and searched plaintiffs' building located at 144-33 183rd Street, Springfield Gardens, New York. Second Am. Compl., ECF No. 43, at 3. It further alleges that law enforcement officers told Daryl Colson – Ronald Colson's uncle who lived in a first floor unit – that they would arrest him and his ailing father unless he allowed the officers to break down the door to Colson's[1] second floor unit. *Id.*; Colson Decl., ECF No. 43, at 2. Seven officers broke down Colson's door, and Detective Haber "grabbed [Colson] by the neck and threw him down to the ground face first while naked, placing his weapon to the back of [his] head" and threatening him. Second Am. Compl. at 3-4. Thereafter, Detective Mara placed handcuffs so tight on Colson's wrists that they drew blood, and subsequently dragged him naked across the hardwood floor. *Id.* at 4. Plaintiffs allege that Detective Boyle searched Colson's kitchen without a warrant and found a bag of flour, which Boyle claimed was a kilogram of

---

[1] Unless otherwise noted, "Colson" refers to plaintiff Ronald Colson. Plaintiff Daryl Colson is referenced by his full name.

cocaine. *Id.* As a result of this, Colson was arrested and charged with an A-1 felony drug offense. *Id.* Detective Parpan also falsely arrested Colson on separate firearm-related felony charges. *Id.*

Ronald Colson filed his original *pro se* complaint on September 19, 2013 against the NYPD, the Queens County Supreme Court Clerk, and the New York Department of Corrections. *See* Compl., ECF No. 2. On November 7, 2013, I dismissed that complaint on the ground that the named defendants were either immune or non-suable entities. *See* Order, ECF No. 11. Colson then sought to file an amended complaint on April 21, 2014, *see* Letter, ECF No. 16, which he supplemented on October 14, 2014. *See* Amendment to Compl., ECF No. 20. On January 5, 2015, I adopted a report and recommendation by Magistrate Judge Pollak, granting Colson's motion to amend and thereby adding as defendants Detective Boyle, Detective Haber, Detective Shepherd, Detective Shulman, Sergeant Sykora, John Doe 4, and John Doe 7. *See* Order, ECF No. 22.

On June 4, 2015, after Boyle, Haber, Shepherd, Shulman, and Sykora sought a pre-motion conference in anticipation of filing a motion to dismiss, *see* ECF No. 33, Colson moved for leave to file a second amended complaint. *See* ECF No. 35. On June 9, 2015, I granted Colson's application and gave him 15 days to file a second amended complaint. I also set a briefing schedule for the defendant officers' motion to dismiss in the event Colson did not file a second amended complaint. When 15 days passed with no complaint filed, the defendants filed their motion to dismiss Colson's second amended complaint, basing their arguments on the first amended complaint. *See* Mot. to Dismiss, ECF No. 39. One day after his opposition was due, Colson filed a second amended complaint, adding Daryl Colson as a plaintiff and Detective Parpan, Detective Sowinski, and the City as defendants. *See* Second Am. Compl., ECF No. 43.

3

Because the arguments in the motion to dismiss apply equally to the claims against Parpan and Sowinski, I construe the motion as though it were made by them as well.

Oral argument on defendants' motion was held on August 14, 2015. During argument, Colson informed the Court that he filed several unanswered public records requests in an attempt to learn the identities of the police officers involved in the April 16, 2011 incident. I directed Colson to submit those documents to the Court and for the parties to brief the issues arising from those requests.

## DISCUSSION

A. *Legal Standard*

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must allege sufficient facts to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 173 (2d Cir. 2012). In making this determination, a court should assume the truth of all well-pleaded allegations in the complaint "and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This rule does not require a plaintiff to provide "detailed factual allegations" in support of his claims to survive a motion to dismiss, *Twombly*, 550 U.S. at 555-56, but it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (2009). Indeed, mere conclusory allegations will not survive dismissal without at least some "further factual enhancement" providing substance to the claims alleged. *Twombly*, 550 U.S. at 557.

In deciding a motion to dismiss, a court considers "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken . . . ." *Samuels v. Air Transp. Local 504*, 992 F.2d

12, 15 (2d Cir. 1993). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation and internal quotation marks omitted).

While *pro se* complaints must contain sufficient factual allegations to meet the plausibility standard, *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), the Court reviews such allegations by reading the complaint with "special solicitude" and interpreting the allegations to raise the "strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam) (quotation marks omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed.") (citation and internal quotation marks omitted).

B.  *Federal Claims*

Defendants contend that plaintiffs' federal claims are time-barred because Colson failed to individually identify the police officers – listed as John Doe defendants in the first amended complaint – prior to the expiration of the statute of limitations. In light of the documents plaintiffs submitted after oral argument that show numerous attempts to name those officers within the statute of limitations period, I conclude that the federal claims are not time-barred.

Section 1983 itself does not provide a statute of limitations, *see* 42 U.S.C. § 1983, but "courts apply the statute of limitations for personal injury actions under state law." *Hogan v. Fisher*, 738 F.3d 509, 517 (2d Cir. 2013) (citing *Owens v. Okure*, 488 U.S. 235, 249-51 (1989) and *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002)). For Section 1983 actions filed in New York, the applicable statute of limitations is Section 214 of the Civil Practice Law and

Rules ("C.P.L.R."), which allows three years to file suit. *See id.*; N.Y. C.P.L.R. § 214. A cause of action under Section 1983 accrues when the plaintiff "knows or has reason to know of the injury which is the basis of his action." *Pearl*, 296 F.3d at 80 (citations and quotation marks omitted).

Since both plaintiffs were aware of the complained-of conduct when it occurred on April 16, 2011, the limitations period for filing a Section 1983 suit began to run on that date and expired three years later, on April 16, 2014. In his initial complaint filed within that period, Colson listed the "NYPD" as a defendant and referred in the body of the complaint to officers in the 105th Precinct. *See* Compl. at 3. He then listed seven John Doe police officers as defendants in his first amended complaint. *See* Am. Compl., ECF No. 19, at 5. The amended complaint was filed five days after the statute of limitations had run out, but it was dated April 14, 2014 and ostensibly delivered for mailing on that date. *See id.* The Supreme Court has held that an incarcerated[2] *pro se* plaintiff's filings should be construed as filed upon delivery to prison officials. *See Houston v. Lack*, 487 U.S. 266 (1988) (holding that *pro se* prisoner's notice of appeal was filed at the moment of delivery to prison authorities for forwarding to the district court); *see also Dory v. Ryan*, 999 F.2d 679, 681-82 (2d Cir. 1993) (extending *Houston* to prisoner Section 1983 complaint). Accordingly, the first amended complaint is construed as timely. Colson did not name the Doe officers, however, until his second amended complaint, which was filed on July 23, 2015, more than a year after the statute of limitations had run out. The question before me is whether the second amended complaint relates back to Colson's complaints that were filed within the statute of limitations period.

---

[2] Colson is currently incarcerated on charges unrelated to this case, and he was incarcerated on April 14, 2014.

1. *Relation Back Under Federal Rule of Civil Procedure 15(c)(1)(C)*

To relate an amended pleading back under Federal Rule of Civil Procedure 15(c)(1)(C), the following conditions must be met: "(1) the claim must have arisen out of conduct set out in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party should have known that, *but for a mistake of identity*, the original action would have been brought against it; and (4) the second and third criteria are fulfilled within 120 days of the filing of the original complaint, and the original complaint was filed within the limitations period." *Hogan*, 738 F.3d at 517 (citing *Barrow v. Wethersfield Police Dept.*, 66 F.3d 466, 468-69 (2d Cir. 1995) (alterations removed)).

Neither plaintiff can satisfy the third element of Rule 15(c)(1)(C). Under the Second Circuit's interpretation of the rule, "lack of knowledge of a John Doe defendant's name does not constitute a 'mistake of identity.'" *See Hogan*, 738 F.3d at 518 (citing *Barrow*, 66 F.3d at 470); *see also Ceara v. Deacon*, 68 F. Supp. 3d 402, 407 (S.D.N.Y. 2014) (citing additional cases). Therefore, Rule 15(c)(1)(C) does not allow plaintiffs' second amended complaint to relate back to Colson's original or first amended complaint.

2. *Relation Back Under Federal Rule of Civil Procedure 15(c)(1)(A)*

Under Federal Rule of Civil Procedure 15(c)(1)(A), an amended pleading can relate back to an earlier pleading if "the law that provides the applicable statute of limitations allows relation back." Here, the applicable law is that of New York, which contains two avenues through which plaintiffs may evade the statute of limitations: C.P.L.R. Sections 1024 and 203.

7

a. *C.P.L.R. § 1024*

C.P.L.R. Section 1024 authorizes the use of a John Doe procedure to identify unknown defendants. It states:

> A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

N.Y. C.P.L.R. § 1024. To substitute a named party for a John Doe party *nunc pro tunc*, a plaintiff must meet two requirements: "First, the party must exercise due diligence,[3] prior to the running of the statute of limitations, to identify the defendant by name," and "[s]econd, the party must describe the John Doe party in such form as will fairly apprise the party that he is the intended defendant.'" *Hogan*, 738 F.3d at 519 (citations, internal quotation marks, and alterations omitted). Plaintiffs meet both of these requirements.

First, Colson made several applications pursuant to the New York Freedom of Information Law, N.Y. Pub. Officers Law, Article 6, §§ 84-90, for identifying information on the defendant officers, which demonstrate that he exercised due diligence in attempting to name them within the statute of limitations. Those applications included: (1) a request dated August

---

[3] "Federal and New York courts have held that where there is no indication in the record that a plaintiff has exercised due diligence prior to the expiration of the statute of limitations, a plaintiff is not entitled to make use of the 'John Doe' procedure provided in CPLR § 1024." *Ceara*, 68 F. Supp. 3d at 409; *see also id.* (citing cases); *Doe v. New York*, 2015 WL 1221495, at *12 (E.D.N.Y. Mar. 16, 2015). The mere making of discovery requests does not, by itself, satisfy the due diligence requirement. *See JCG v. Ercole*, 2014 WL 1630815, at *14 (S.D.N.Y. Apr. 24, 2014) (finding lack of due diligence where plaintiff waited until the last minute to submit multiple discovery requests and failed to promptly seek further discovery); *Temple v. N.Y. Cmty. Hosp. of Brooklyn*, 933 N.Y.S.2d 321, 323 (2d Dep't 2011) (concluding that "the plaintiff failed to exercise due diligence" in part, because when the responses to "some limited discovery demands" were "less than adequate, the plaintiff failed to promptly seek further discovery . . . and failed to properly and promptly seek assistance from the [New York] Supreme Court.").

27, 2013 to the Queens Supreme Court for "total discovery" in his case;[4] (2) a request dated October 19, 2013 requesting "the names and badge numbers of all officers that were present and entered [Colson's] home on April 16, 2011"; and (3) a request dated December 6, 2013 notifying the recipient that it was Colson's "second letter" for "all names and badge numbers" of the officers involved in Incident #10253/11.[5] *See* Supp. Docs., ECF No. 45, at 2-3; Supp. Resp., Ex. B, ECF No. 49-2, at 3. The Queens Supreme Court responded to Colson's request, but stated that it could not provide the discovery and related case information that he sought. *See* Supp. Docs. at 4-5. Though defendants contend that the information probably would not have helped Colson identify the Doe officers anyway, Supp. Resp. at 3, they miss the point; the fact that Colson submitted requests for information that reasonably could have disclosed the identities of the officers demonstrates due diligence. In addition, it appears that Colson's two other requests were also left unanswered. Defendants argue that it is unclear whether those applications were addressed to the NYPD Legal Bureau or to some other government agency, and in any event, the requests were never received by the Bureau. *Id.* at 2. Colson contends that his requests "were indeed addressed to a specific New York City [a]gency" and mailed to that agency. Supp. Reply at 2. As noted above, I am required to accept all of the plaintiff's factual allegations as true at the motion to dismiss stage. Accordingly, for the purposes of this motion, I accept that Colson

---

[4] Although the case Colson sought information for was related to Incident #1045/11, he explains that the officers and charges in that case were related to those in Incident #10253/11, which is at issue. In fact, "[b]oth cases were always heard on the same dates" and Colson was sentenced for Incident #1045/11 on the same day his charges under Incident #10253/11 were dismissed. *See* Supp. Reply, ECF No. 54, at 4.

[5] Colson also filed complaints with the NYPD Internal Affairs Bureau and Civilian Complaint and Review Board, but the allegations in those complaints – regarding a paid informant and the non-arrest of Colson's friends – are too tenuously linked to the identity of the Doe officers. *See* Letter, ECF No. 51; Supp. Reply at 2-3. In any event, the other documents sufficiently demonstrate that Colson satisfied the due diligence requirement.

9

sent FOIL requests to the relevant agencies to determine the Doe officers' identities. I also conclude that he satisfied the due diligence requirement.

Second, both Colson's initial and first amended complaints described the incident at issue in sufficient detail to apprise the police officers that they were the intended defendants. The complaint states that at 1:30 PM on April 16, 2011, "the NYPD officers of the 105th precinct broke down [Colson's] front door without displaying a valid search or arrest warrant and began searching all through the house after placing all of the occupants in hand cuffs." Compl. at 3. The first amended complaint states those facts in greater detail, including separate and specific allegations against each Doe officer. *See* Am. Compl. at 4; *see Ceara*, 68 F. Supp. 3d at 411-12 (stating that "Plaintiff's detailed description of the incident in the original Complaint provided sufficient information" to satisfy the second requirement of Section 1024); *Maurro v. Lederman*, 795 N.Y.S.2d 867, 868 (Sup. Ct. 2005) (finding that description of a Jane Doe physician who treated plaintiff at the defendant's office "whose name is fictitious as presently unknown" was sufficient for the purpose of fairly apprising the defendant). Accordingly, I find that plaintiffs have satisfied both prongs of Section 1024, and their federal claims therefore survive.

      b.    *C.P.L.R. § 203*

A plaintiff may also seek relation back under New York's general relation back statute, which states that, in an action commenced by filing, "a claim asserted in the complaint is interposed against the defendant or a co-defendant united in interest with such defendant when the action is commenced." N.Y. C.P.L.R. § 203(c). A complaint relates back to a timely filed pleading under this provision where:

> (1) the new claim arose out of the same conduct, transaction or occurrence as the original allegations; (2) the new party is united in

> interest with the original defendant, and by reason of that relationship can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits; (3) the new party knew or should have known that, but for a mistake as to the identity of the proper parties, the action would have been brought against him as well.

*Bender v. City of New York*, 2015 WL 524283, at *5-6 (S.D.N.Y. Feb. 10, 2015) (citation omitted). When a party seeks to add a new defendant under Section 203, New York courts have required that "but for a mistake by plaintiff as to the identity of the proper parties, the action would have been brought against that party as well." *Ramos v. Cilluffo*, 714 N.Y.S.2d 88, 89 (2d Dep't 2000) (citation and quotation marks omitted); *see Buran v. Coupal*, 87 N.Y.2d 173, 178 (1995) (holding that the mistake need not be excusable). The requirement closely follows Rule 15(c)(1)(C)'s requirement. *See Vasconcellos v. City of New York*, 2014 WL 4961441, at *8 (S.D.N.Y. Oct. 2, 2014); *Sloane v. Town of Greenburgh*, 2005 WL 1837441, at *3 (S.D.N.Y. July 27, 2005); *Buran*, 87 N.Y.2d at 179 (noting that Section 203 was largely modeled after Rule 15(c) of the Federal Rules of Civil Procedure).

Accordingly, not knowing the identity of the John Doe officers does not constitute a "mistake" under C.P.L.R. § 203. *See Bender*, 2015 WL 524283, at *6. Plaintiffs' claims do not relate back under this provision.

### c. *Conclusion Regarding Relation Back*

In sum, the claims against defendants Boyle, Haber, Shepherd, Shulman, Sykora, Parpan, and Sowinski relate back to the filing of Colson's original complaints through the provisions of Section 1024 of the C.P.L.R. Plaintiffs' federal claims against these officers are not time-barred by 42 U.S.C. § 1983's three-year statute of limitations. Because the City was listed as a defendant after defendants had already filed their motion to dismiss, the City is

directed to show cause in writing by Friday, January 29, 2016 why plaintiffs' federal claims against the City should not also relate back to the initial complaints.

C. *State Law Claims*

Plaintiffs' failure to comply with New York State statutory requirements, however, bars their remaining state law claims. Under New York law, filing a notice of claim with the New York City Comptroller is a condition precedent for bringing an action against New York City or its employees. *See* N.Y. Gen. Mun. L. § 50-k(6) ("No action . . . shall be prosecuted or maintained against the city . . . or an employee . . . unless notice of claim shall have been made and served upon the city . . . ."); *Cantave v. New York City Police Officers*, 2011 WL 1239895, at *12 (E.D.N.Y. Mar. 28, 2011) ("Filing a notice of claim is a mandatory condition precedent to suit against New York City and its employees, and failure to comply with this condition is grounds for dismissing an action." (citations omitted)). The notice of claim requirement applies "equally to state tort claims brought as [supplemental] claims in a federal civil rights action." *Fincher v. County of Westchester*, 979 F. Supp. 989, 1002 (S.D.N.Y. 1997) (citations omitted).

The notice must be served upon the City within 90 days after a claim arises. N.Y. Gen. Mun. L. § 50-e(1)(a). Once a notice of claim is filed, the action "shall be commenced within one year and ninety days after the happening of the event upon which the claim is based." N.Y. Gen. Mun. L. § 50-i(1)(c). Failure to comply with the notice of claim requirements requires dismissal of the state law claims. *See Ruiz v. Herrera*, 745 F. Supp. 940, 946 (S.D.N.Y. 1990) (dismissing tort claims where plaintiff failed to comply with notice of claim requirements).

In the instant case, plaintiffs have not filed any notice of claim in connection with the April 16, 2011 incident. Furthermore, plaintiffs are barred from seeking leave to file a late

notice of claim. *See* N.Y. Gen. Mun. Law § 50-e(5)(a) ("The extension [of time to serve a late notice of claim] shall not exceed the time limited for the commencement of an action by the claimant against the public corporation."); *see also Cantave*, 2011 WL 1239895, at *12. The date to file plaintiffs' notice of claim accrued on April 16, 2011 and expired on July 15 of that year. Since Colson filed his original complaint on September 19, 2013, nearly two years and two months after the deadline, I lack the authority to extend the time to file the notice of claim. *See Pierson v. City of New York*, 56 N.Y.2d 950, 955-56 (1982).

## CONCLUSION

For the reasons set forth above, plaintiffs' federal claims against the individual defendants shall proceed. The state claims are dismissed. The City is directed to show cause in writing by Friday, January 29, 2016 why plaintiffs' federal claims against the City should not proceed as well.

So ordered.

John Gleeson, U.S.D.J.

Dated: January 20, 2016
      Brooklyn, New York